IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA E. BOZEK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 07 C 4303 |
| v. | ) |
| | ) |
| CORINTHIAN COLLEGES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 15, 2007, Plaintiff Laura E. Bozek brought a ten-count Amended Complaint against her former employer Corinthian Colleges, Inc. ("Corinthian") and her former direct supervisor, Charles Mitchell. Before the Court is Corinthian's Partial Motion for Summary Judgment as to Bozek's sexual harassment and retaliation claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and Illinois common law. *See* Fed.R.Civ.P. 56.[1] For the following reasons, the Court grants Corinthian's motion.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Specifically, Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each

---

[1] According to Corinthian, the parties have reached a partial settlement agreement as to Counts I, II, III, IV, V, and X of Bozek's Amended Complaint, and thus the present motion seeks summary judgment on the remaining counts of the Amended Complaint, namely, Counts VI, VII, VIII, and IX, all of which are against Corinthian. The parties, however, have yet to file an agreed order dismissing Counts I through V and Count X of the Amended Complaint.

side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008). As such, pursuant to the Local Rules the Court will not consider the additional facts a nonmoving party proposes in its Local Rule 56.1(b)(3) response, but instead must rely on the nonmoving party's Local Rule 56.1(b)(3)(C) Statement of Additional Facts. *See id.* at 643 ("court does not abuse its discretion when it opts to disregard facts presented in a manner that does follow the Rule's instructions").

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. Moreover, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-

10 (7th Cir. 2005); *see also Raymond,* 442 F.3d at 604 ("district courts are entitled to expect strict compliance with Local Rule 56.1"). With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

### A.     Introduction

Defendant Corinthian Colleges, Inc., a Delaware corporation with its principal place of business in California, operates post-secondary colleges throughout the United States offering diploma and degree programs to train students in, among other areas, massage therapy, medical assisting, and dental assisting. (R. 59-1, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) One of Corinthian's brands is "Everest College," formerly known as "Olympia College." (*Id.* ¶ 2.) At all relevant times, Corinthian's Olympia College, Burr Ridge Campus ("Burr Ridge Campus") offered programs in dental assisting, medical administrative assisting, medical assisting, and massage therapy. (*Id.*)

Plaintiff Laura Bozek, a resident of Illinois, is a former Corinthian employee who worked at the Burr Ridge Campus. (*Id.* ¶ 3.) During Bozek's employment, Charles Mitchell was the Director of Education at the Burr Ridge Campus and was Bozek's direct supervisor. (*Id.* ¶ 4.) As the Director of Education at the Burr Ridge Campus, Mitchell oversaw the educational programs and managed the department chairs and instructors. (*Id.*) During the relevant time period, Laureen Cahill was Corinthian's Regional Vice President for the Midwest Region, which encompassed the Burr Ridge Campus. (*Id.* ¶ 5.) Cahill oversaw the operations of the schools in the region, including employee performance issues, and served as Mitchell's direct supervisor during February 2007. (*Id.*) Also during the relevant time period, Jim Wade was Corinthian's

3

Senior Vice President of Human Resources. (*Id*. ¶ 6.) Kayleen Hittesdorf was the Human Resources Director and Michelle McCormack was the Human Resources Generalist for the region encompassing the Burr Ridge Campus. (*Id*. ¶ 7.)

### B. Bozek's Employment with Corinthian

On April 3, 2006, Corinthian hired Bozek as an instructor in the dental assisting program at the Burr Ridge Campus. (*Id.* ¶ 10.) Bozek taught dental assisting and also had administrative duties. (*Id*.) In late 2006 and early 2007, Mitchell began to observe and receive reports related to Bozek's job performance and professionalism. (*Id.* ¶ 16.) For example, a student complained that Bozek used profanity in the classroom – a complaint that Bozek denied. (*Id.* ¶ 17.) Also, at a meeting with Bozek and the Career Services Department concerning dental assistant certification, Mitchell observed Bozek behave in an unprofessional manner. (*Id*. ¶ 20.) Mitchell also observed that Bozek acted unprofessionally and used profanity at a February 5, 2007 business dinner related to the school's dental program. (*Id*. ¶ 21.) During this same time period, various individuals reported to Cahill that Bozek had a conflict with the career services department and that Bozek used inappropriate language and gossiped when interacting with other staff members and supervisors. (*Id*. ¶ 25.)

Based on his interactions with Bozek and his observations – and after consultation with Cahill – Mitchell thought it was necessary to issue Bozek a warning. (*Id*. ¶ 23.) Mitchell then drafted a Corrective Action Notice ("CAN"), the purpose of which is to put an employee on notice that his or her work performance needs improvement. (*Id*. ¶ 24.) Mitchell forwarded the draft CAN to McCormack and Cahill for review and approval. (*Id*. ¶ 26.) The finalized CAN required Bozek to immediately refrain from gossiping and making misleading statements

4

regarding other employees' behavior and also provided that failure to abide by the terms of the CAN would result in the termination of her employment. (*Id.*) On February 13, 2007, Mitchell met with Bozek to give her the CAN, but Bozek refused to sign it. (*Id.* ¶ 27.)

### C. Bozek's Suspension and Termination

The day after Mitchell issued Bozek's CAN, Mitchell received a report that Bozek was spreading more rumors, namely, to the Department Chair of the Massage Therapy Department, Robin Helton. (*Id.* ¶ 29.) Specifically, Bozek told Helton that Mitchell and another male employee were having an affair that this employee was "blowing" Mitchell. (*Id.* ¶¶ 29, 30.) After learning of Bozek's comments to Helton, Cahill believed that Bozek had violated the CAN. (*Id.* ¶ 30.) On February 16, 2007, Cahill met with Bozek about her comments, but Bozek denied making them. (*Id.* ¶ 32.) Thereafter, Cahill put Bozek on paid leave so that she could investigate the situation. (*Id.*) Around February 19 or 20, 2007, Bozek met Cahill in the parking lot of the Burr Ridge Campus to return course materials that she had at home. (*Id.* ¶ 33.) Bozek maintains that included in these course materials was a letter dated February 19, 2007, in which she outlined various complaints that she had against Mitchell – none of which were sexual harassment complaints or allegations. (*Id.*) In addition, Bozek sent Cahill an email on February 13, 2007, complaining about Mitchell. (R. 62-1, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 5.) Again, Bozek admits that the February 13, 2007 email did not contain any allegations of sexual harassment. (Def.'s Stmt. Facts ¶ 28, Ex. B., Bozek Dep., at 243.)

Meanwhile, Cahill investigated Bozek's comments to Helton after which Cahill decided to terminate Bozek's employment on or around February 22, 2007. (*Id.* ¶ 35.) Cahill considered Bozek's actions to be violations of the code of business conduct, which prohibited

5

insubordination and disrespectful or improper conduct toward a supervisor. (*Id*. ¶ 36.) Mitchell was not involved in the termination decision. (*Id*. ¶ 35.) After Cahill attempted to contact Bozek on February 26, 2007, Cahill called Bozek on February 27, 2007 and terminated her employment with Corinthian. (*Id*. ¶¶ 40, 41.)

### D. Bozek's Sexual Harassment Complaint

On February 26, 2007, Bozek sent Wade and Corinthian's Chief Executive Officer Jack Massimino a letter via overnight delivery listing a chronology of sexual harassment allegations and other events related to Mitchell dating from April 2006. (*Id*. ¶ 43; Pl.'s Stmt. Add'l Facts ¶ 12.) Wade received the letter on February 27, 2007 and emailed Bozek to acknowledge its receipt. (Def.'s Stmt. Facts ¶ 43.) In his response email to Bozek, Wade stated that Corinthian's senior employee relations members would investigate her allegations. (Pl.'s Stmt. Add'l Facts ¶ 13.) On July 17, 2007, Bozek filed a charge with the EEOC alleging sexual harassment and retaliation based on her February 26, 2007 letter to Wade and Massimino. (Def.'s Stmt. Facts ¶ 60.)

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving

6

party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quoting Fed.R.Civ.P. 56(e)).

## ANALYSIS

**I.  Sexual Harassment/Hostile Work Environment Claim – Counts VI and VII**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Accordingly, Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Put differently, "[o]ne of the ways in which Title VII's prohibition against sex discrimination in the terms and conditions of employment may be violated is through sexual harassment that is either severe or pervasive enough to create an abusive working environment." *Jackson v. County of Racine,* 474 F.3d 493, 499 (7th Cir. 2007).

First, it appears that Bozek is alleging a "quid pro quo" sexual harassment claim in Count VI of her Amended Complaint in addition to her hostile work environment claim in Count VII. *See Bryson v. Chicago State Univ.,* 96 F.3d 912, 915 (7th Cir. 1996) ("Quid pro quo harassment occurs in situations where submission to sexual demands is made a condition of tangible

7

employment benefits."). The Court will consider Bozek's two sexual harassment claims as one because "the Supreme Court [has] abandoned the commonly used categories of hostile work environment harassment and quid pro quo harassment, opting instead to distinguish between cases in which the supervisor takes a tangible employment action against the subordinate and those in which she does not." *Wolf v. Northwest Ind. Symphony Soc'y,* 250 F.3d 1136, 1141 (7th Cir. 2001). Moreover, Bozek fails to make any arguments concerning her quid pro quo harassment claim in her legal memorandum to this Court. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in briefs amounts to abandonment of claim).

In its summary judgment motion, Corinthian first argues that Bozek's sexual harassment allegations are time-barred under 42 U.S.C. § 2000e-5(e). To clarify, in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court held "that a hostile working environment is a single unlawful practice under Title VII of the Civil Rights Act of 1964." *Bright v. Hill's Pet Nutrition, Inc.,* 510 F.3d 766, 768 (7th Cir. 2007). "A charge of discrimination based on such a practice covers all events during that hostile environment, if the charge is filed within 300 days (180 days in some states) of the last act said to constitute the discriminatory working condition." *Id.* (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Doe v. Oberweis Dairy,* 456 F.3d 704, 708 (7th Cir. 2006) (Illinois plaintiff must file EEOC charge within 300 days). In other words, an employee may recover for conduct that occurred more than 300 days before the employee filed a charge of discrimination "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan,* 536 U.S. at 122; *Bannon v. University of Chicago,* 503 F.3d 623, 629 (7th Cir. 2007) ("When a plaintiff makes a hostile work

8

environment claim, the court should consider harassing incidents that occur outside the limitations period as long as at least one harassing incident occurred within the period.").

Here, Bozek filed her EEOC charge on July 17, 2007, and thus 300 days prior to that date is September 21, 2006. Therefore, the Court will consider allegations of sexual harassment that occurred prior to September 21, 2006 only if Bozek establishes that at least one act pertaining to her sexual harassment claim occurred within the 300 day time period from September 21, 2006 to July 17, 2007 and that these acts were part of the same unlawful employment practice. *See Morgan,* 536 U.S. at 122.

In her Local Rule 56.1(b)(3)(C) Statement of Additional Facts, Bozek only sets forth evidence supporting two timely sexual harassment allegations, namely, that on two separate occasions when she met with Mitchell in his office, Mitchell told Bozek to leave his office door open on her way out so that he could watch the view from behind. (Pl.'s Stmt. Add'l Facts ¶ 4.) Meanwhile, Corinthian sets forth factual support for Bozek's timely allegations that sometime in September 2006, Mitchell stood near her during a meeting in a roomful of students and that his arm and leg touched hers and also that Mitchell stared at her lips while asking her to repeat certain words, although the record reveals that Bozek was aware that Mitchell may have had a hearing impairment. (Def.'s Stmt. Facts ¶ 51, 54; Ex. B, Bozek Dep., at 122-24, 160-62.)

Bozek fails to provide any details about the circumstances surrounding Mitchell's conduct, and – without more – the Court would be hard-pressed to conclude that these timely allegations constitute sexual harassment. *Anderson*, 477 U.S. at 255 (after "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial'"); *see also Kampmier v. Emeritus Corp.,* 472 F.3d 930, 942

9

(7th Cir. 2007) (distinguishing between harassing and merely objectionable conduct). As the Supreme Court teaches, "Title VII does not prohibit 'genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex'" and that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal citations omitted). As such, Bozek has failed to establish that at least one act pertaining to her sexual harassment claim occurred within the 300 day time period from September 21, 2006 to July 17, 2007. *See Morgan,* 536 U.S. at 122.

Even if the Court were to consider all of Bozek's allegations of sexual harassment as set forth in her Local Rule 56.1(b)(3)(C) Statement of Additional Facts – including Bozek's time-barred allegations – Bozek fails to establish a hostile work environment claim.[2] Specifically, Bozek must show that: "(1) she was subject to unwelcome sexual harassment; (2) the harassment was based on sex; (3) the harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile, or offensive working environment that

---

[2] In her February 26, 2007 letter to Wade and Massimino, Bozek highlighted 37 separate incidences of allegedly inappropriate behavior. (Def.'s Stmt. Facts ¶ 43.) Bozek, however, fails to factually support these 37 incidences in her Local Rule 56.1(b)(3)(C) Statement of Additional Facts and also fails to explain these incidences in sufficient detail in her legal memorandum to the Court. As such, the Court will only consider the incidences that have a sufficient factual basis in accordance with the Local Rules. *See Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008) ("It is not the duty of the court to scour the record in search of evidence to defeat a motion summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies."). Meanwhile, although Bozek fails to address more than a handful of these incidences, the record reveals that the majority of these incidences were not based on sex or were not gender-related in the first instance. (*See* Def.'s Stmt. Facts. ¶¶ 43, 51-56.)

seriously affected her psychological well-being; and (4) there is a basis for employer liability." *Benders v. Bellows and Bellows,* 515 F.3d 757, 768 (7th Cir. 2008). "Whether an employer's conduct creates a hostile work environment is not subject to 'a mathematically precise test' and 'can be determined only by looking at all the circumstances.'" *Atanus v. Perry,* 520 F.3d 662, 676 (7th Cir. 2008) (quoting *Harris*, 510 U.S. at 22-23). "Relevant circumstances include 'the frequency and severity of the conduct; whether it was threatening and/or humiliating or merely an offensive utterance; and whether the harassment unreasonably interfered with her work.'" *Atanus,* 520 F.3d at 676 (citation omitted).

In her Local Rule 56.1(b)(3)(C) Statement of Additional Facts, Bozek points to her deposition testimony in which she stated that during a April 2006 presentation, an employee named Dave Profita asked Mitchell several times whether he liked "those bon bons." (Pl.'s Stmt. Add'l Facts ¶ 4.) Also during the presentation, Mitchell asked Bozek if she liked working with her hands and what kinds of instruments she used. (*Id.*) Bozek further testified that later in April 2006 Profita asked Mitchell – in front of Bozek and while on speaker phone – whether Mitchell would "rock the boat" with him in reference to Profita going out on his boat that evening. (*Id.*, Bozek Dep., at 111-113.) Mitchell then said that he would like to "rock the boat" with both Profita and Bozek. (Pl.'s Stmt. Add'l Facts ¶ 4.) In further support of her sexual harassment claim, Bozek points to the fact that Mitchell gave her a $100 gift card in June 2006 and that at some point during her employment Mitchell hugged her. (*Id.* ¶¶ 6, 7.)

Viewing the facts and all reasonable inferences in Bozek's favor, this conduct – some of which is objectionable and some of which is not gender-related in the first instance – does not amount to harassing conduct. *See Henry v. Milwaukee County*, 539 F.3d 573, 587 (7th Cir.

11

2008) (courts must separate significant from trivial harms); *Yuknis v. First Student, Inc.,* 481 F.3d 552, 555 (7th Cir. 2007) ("The more remote or indirect the act claimed to create a hostile working environment, the more attenuated the inference that the worker's working environment was actually made unbearable"). Indeed, as the Seventh Circuit instructs "'occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers' generally does not create a work environment that a reasonable person would find intolerable." *See Kampmier,* 472 F.3d at 941 (citation omitted). Here, Bozek's allegations concerning the April 2006 comments and Mitchell's comments about viewing from behind, along with Mitchell staring at Bozek's lips, the gift card, and the touching and hugging do not amount to conduct that was so severe or pervasive that a reasonable person would find the work environment hostile. *See Andonissamy v. Hewlett-Packard Co.,* 547 F.3d 841, 847 (7th Cir. 2008); *see also Patt v. Family Health Sys., Inc.,* 280 F.3d 749, 754 (7th Cir. 2002) (complaints of eight gender-related comments during the course of employment, including that "the only valuable thing to a woman is that she has breasts and a vagina," insufficient to demonstrate hostile work environment); *Adusumilli v. City of Chicago,* 164 F.3d 353, 361-62 (7th Cir. 1998) (complaints of teasing, ambiguous comments about bananas, rubber bands, and low-neck tops, staring and attempts to make eye contact, and four incidents where a co-worker briefly touched plaintiff's arm, fingers, or buttocks did not constitute sexual harassment).

Finally, Bozek fails to demonstrate that Mitchell's conduct had a negative effect on her work or unreasonably interfered with her work performance. *See Atanus,* 520 F.3d at 676; *Benders,* 515 F.3d at 768. In fact, Bozek presents evidence that she was a dedicated employee and well-regarded by her students and Mitchell. (Pl.'s Stmt. Add'l Facts ¶¶ 1-3.)

As the Supreme Court has made clear, Title VII is not a general code of workplace civility nor does Title VII mandate "admirable behavior" from employers. *See Faragher,* 524 U.S. 788; *McKenzie v. Milwaukee County,* 381 F.3d 619, 624 (7th Cir. 2004). Indeed, "judicial standards for sexual harassment must filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal citations and quotations omitted). From the record, it appears that profanity and vulgar behavior were not uncommon at the Burr Ridge Campus. Nevertheless, Bozek has failed to present sufficient evidence creating a material issue of fact for trial establishing that Mitchell's conduct was so severe or pervasive that a reasonable person would find her workplace hostile. *See Andonissamy,* 547 F.3d at 847. Accordingly, the Court grants Corinthian's summary judgment motion as to Counts VI and VII of the Amended Complaint.

## II. Title VII Retaliation Claim – Count VIII

Next, Bozek maintains that Corinthian is not entitled to summary judgment on her Title VII retaliation claim. Under Title VII, it is unlawful for an "employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII's "anti-retaliation provision seeks to secure th[e] primary objective [of] preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *White,* 548 U.S. at 63. A plaintiff

may establish a retaliation claim under either the direct or indirect method of proof. *Benders,* 515 F.3d at 764.

Bozek attempts to establish her retaliation claim under the direct method of proof, which "requires that the plaintiff adduce either 'direct or circumstantial evidence that the employer's decision to take the adverse job action was motivated by an impermissible purpose.'" *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 517 F.3d 470, 473-74 (7th Cir. 2008) (citation omitted). To successfully establish a retaliation claim under the direct method, Bozek must present evidence (1) that she engaged in a statutorily protected activity, (2) Corinthian subjected her to an adverse action, and (3) a causal connection between the two. *Gates v. Caterpillar, Inc.,* 513 F.3d 680, 686 (7th Cir. 2008). A "causal link between the protected expression and an adverse employment action may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision" *Id.* (citation omitted); *see also Tubergen,* 517 F.3d at 473-74.

Bozek has presented evidence establishing the first two requirements under the direct method of proof, namely, her February 26, 2007 letter to Wade and Massimino setting forth her sexual harassment claims and Corinthian's termination of her employment. *See Gates,* 513 F.3d at 686. Thus, the Court's focus is whether Bozek can establish that a causal connection existed between the February 26, 2007 letter and her termination. *See id.*

The record reveals that there is no evidence that Cahill was aware of Bozek's sexual harassment allegations against Mitchell – as set forth in the February 26, 2007 letter to Wade and Massimino – before Cahill decided to terminate Bozek's employment on February 22, 2007 and when she actually terminated Bozek's employment on February 27, 2007. (Def.'s Stmt. Facts ¶

14

44.) Bozek nevertheless contends that Cahill must have known about the February 26 letter – received by Wade on February 27 – because Wade would have forwarded the letter Kayleen Hittesdorf, the Human Resources Director, and that both Hittesdorf and Cahill decided to terminate Bozek's employment. Bozek's explanation fails for several reasons, especially because there is no evidence in the record that Hittesdorf took any part in the decision to terminate Bozek's employment. *See Rockwell Automation, Inc. v. National Union Fire Ins. Co. of Pittsburgh,* 544 F.3d 752, 757 (7th Cir. 2008) (courts "are not required to draw every conceivable inference from the record, and mere speculation or conjecture will not defeat a summary judgment motion.") (citation omitted). Instead, the evidence reveals that Cahill was the sole decisionmaker in terminating Bozek's employment and that she was unaware of the February 26, 2007 letter or any other claims of sexual harassment against Mitchell when she decided to terminate Bozek's employment. (*Id.* ¶¶ 35, 36, 44.) In fact, it is undisputed that Bozek did not make any sexual harassment complaints to Cahill. (*Id.* ¶ 45.)

Finally, the Court rejects Bozek's argument that she has demonstrated causation because Cahill exclusively relied upon Mitchell's opinion about Bozek's performance in terminating her employment. *See Meister v. Georgia-Pacific Corp.,* 43 F.3d 1154, 1161 (7th Cir. 1995) ("Causation may be demonstrated, despite the decisionmakers' absence of a retaliatory motive, if the terminated employee can show that the ultimate decisionmakers solicited and relied upon a general evaluation of his performance by an employee who possessed a retaliatory motive.") More specifically, Bozek's argument is not supported by the record because Cahill also based her decision to terminate Bozek's employment on reports from other managers, such as Robin Helton, and on her own interactions with Bozek. (*See* Def.'s Stmt. Facts ¶¶ 25, 29, 30, 34, 35.)

Viewing the evidence and all reasonable inferences in Bozek's favor, she has failed to present evidence creating a genuine issue of material fact for trial that there was a causal connection between her February 26, 2007 complaint of sexual harassment and her termination. As such, the Court grants Corinthian's summary judgment motion as to Bozek's retaliation claim as alleged in Count VIII of the Amended Complaint.

### III.     Illinois Retaliatory Discharge Claim – Count IX

In Count IX of her Amended Complaint, Bozek alleges a claim of common law retaliatory discharge based on the same allegations set forth in her Title VII retaliation claim. "To make out a claim for retaliatory discharge under Illinois law, an employee must demonstrate (1) that the employee has been discharged; (2) that the discharge was in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy." *Dotson v. BRP U.S. Inc.,* 520 F.3d 703, 707 (7th Cir. 2008) (citing *Hartlein v. Illinois Power Co.,* 151 Ill.2d 142, 176 Ill.Dec. 22, 601 N.E.2d 720, 728 (Ill. 1992)).

In its summary judgment motion, Corinthian maintains that Bozek's retaliatory discharge claim based on her sexual harassment allegations is preempted by the Illinois Human Rights Act ("IHRA"). The Court agrees. Specifically, the IHRA created a statutory retaliatory discharge cause of action that prohibits sex discrimination and harassment and provides the exclusive remedy for such claims. *See Corluka v. Bridgford Foods of Ill., Inc.,* 284 Ill.App.3d 190, 193-94, 671 N.E.2d 814, 817 (Ill. 1996); *see also Maksimovic v. Tsogalis,* 177 Ill.2d 511, 517, 227 Ill.Dec. 98, 687 N.E.2d 21 (Ill. 1997) (question is whether tort claim inextricably linked to civil rights violation). Because Bozek's retaliatory discharge claim is based on her sexual harassment allegations, IHRA preempts Bozek's retaliatory discharge claim. In fact, Bozek admits as much

16

by acknowledging that the case law Corinthian relies upon supports statutory preemption under the circumstances. *See, e.g., Hobson v. Tishman Speyer Prop., L.P.,* 07 C 5744, 2008 WL 2625905, at *6 (N.D. Ill. June 27, 2008). Accordingly, the Court grants Corinthian's summary judgment motion as to Count IX of the Amended Complaint.

## CONCLUSION

For the reasons, the Court grants Defendant's Partial Summary Judgment Motion pursuant to Federal Rule of Civil Procedure 56.

**Dated:** February 13, 2009

                                       **ENTERED**

                                       *[signature]*
                                       **AMY J. ST. EVE**
                                       **United States District Court Judge**